Good afternoon and may it please the court. I'm Anthony Shelley here on behalf of the ERISA Industry Committee also known as ERIC and I would like to reserve three minutes of my time for rebuttal. I plan to focus initially and primarily here on the first argument we presented in our briefs. There have been several arguments that ERIC has presented, alternative arguments as to why this is the Seattle ordinance is preempted but I'd like to initially focused on the first argument and that is that there is preemption because each of the three options in the Seattle ordinance requires the establishment or maintenance of an ERISA plan. On this first argument the dispute is really over whether the first option the direct payment option constitutes an ERISA plan and it does in our view constitute an ERISA plan for two reasons because the direct payment is a benefit under ERISA it's not wages and because an employer needs a plan to administer that benefit. On the issue of whether the direct payment is a benefit the city says no it is not and the district court said it wasn't as well because the money supposedly is just wages but the ordinance itself says that these monies under the direct payment option are not wages and that's in section 14.28.060.E and it did the amount additionally the amount of the direct payment rises or falls with medical inflation which wages usually don't. Was there direct payment in Golden Gate? There was not a direct payment to an employee in Golden Gate and that's one of the chief reasons to distinguish Golden Gate. The payment instead was to the city of San Francisco to provide health care to low-income workers as opposed to in this case. I'm looking at page 644 of Golden Gate it looks like it was like the plan included contributions to a health savings account reimbursement or to covered employees for expenses and payments to a covered employer to a third party and then fourth would be costs incurred by a covered employer in the direct delivery of health care. None of those qualify as direct as direct payments? The first three do the fourth does not and in Golden Gate what the court said was because of that fourth because that fourth option did not constitute an ERISA plan the whole statute survives ERISA preemption. Our point here in this argument is that if you're going to take the Golden Gate paradigm and say that so long as there's one option that is not an ERISA plan you therefore don't have preemption that paradigm doesn't apply because under every option here you have an ERISA plan and so the key comparison then is whether the Golden Gate payment to the city option whether that's close to the direct to employee payment option under the Seattle statute to also not be an ERISA plan and our point is it's not it's entirely different and in fact I think Golden Gate would have come out differently if it had a if it had four options the first three of which were ERISA plans and the fourth option was a direct to employee payment that worked like this one and the reason the the reason that this isn't wages like it was in that under that fourth option in Golden Gate is because it varies also based on the size of the individual's family and based on the whether the individual has a spouse or partner wages don't do that they don't vary based on the family size and in Golden Gate under that fourth option Judge Biby that you mentioned the the amount to the city only varied with the number of hours that were worked which is almost akin to wage. Why should that make a difference? It makes a difference. When I say that I mean you know that that the amount of the payment can vary. Because that then goes to the second element once you have a benefit that's not wages for there to be an ERISA plan you have to it's it has to be necessary that the employer must establish an administrative process the variance is what requires the the administrative process in this situation the employer is forced to go out in order to make to make the direct payment to the employee has to go out and reasonably investigate the individual's family situation spousal and partner situation that that requires an administrative to do pardon me why is that you know why is that why can't the employer do the same thing they do for you know when an employer files a tax exemption for you know that's not required that's not required I don't believe on the tax form the tax form a w-2 form for instance I believe only requires that the individual list how many dependents they want to claim and it might not be exactly equal to what they actually have in their household for instance because the withholding amount they want to vary the withholding amount based on certain conditions but the important thing is the comparison to Golden Gate the Golden Gate varied the wages excuse me varied the payments to the city solely on the basis of an aggregate of how many workers do you have in how many hours in total do they work here the employer has to set up an administrative scheme to make a payment to each individual employee not a an aggregate to the to the state but at each individual employee and has to then determine for each individual employee exactly what level of benefits they're entitled to additionally there's a there's an intricate waiver process associated with this first option if the employer presents the option of coverage and the employee doesn't accept that option then the employer has to provide the direct payment but has to memorialize the entire process of offering the offering the other type of coverage all these things were non-existent in Golden Gate and as a result Golden Gate is a different case instead this option is much close to what the court considered in the Aloha Airlines case which is another precedent we cited the Aloha Airlines case involved a Hawaii wage law yes a wage law in fact on its on its terms that required airline employers to provide money to pilot employees to cover the cost of certain physicals the court said that the money was benefits and the program the employer had to program there unlike here was a direct to employee excuse me the program in Aloha Airlines like here but unlike in Golden Gate was a direct employer to employee payment plan the payment turned merely on whether the pilot was a class a pilot or class B pilot in the sense the sense of did they have a requirement for a physical that was the only requirement but nonetheless the court said that was a sufficiently intricate determination of benefits eligibility determination to constitute the need for an administrative scheme for an ERISA plan and that's very much like Aloha has come under criticism and perhaps no longer viable law what is your what is your reaction to that? I disagree entirely I disagree entirely because on this aspect of Aloha Airlines it's not been criticized it's not been criticized on the point of whether or not the requirement of a payment of the type that was in Aloha Airlines could constitute an ERISA plan I think it's drawing criticism for some other aspects of the case moreover the cases on which this whole issue relies are earlier it's for Halifax and Mirage which were earlier than Aloha Airlines the cases that come after Aloha Airlines in the ERISA preemption world for instance are don't have to do with this issue as to whether a administrative scheme is sufficiently is sufficiently intricate to constitute an ERISA plan so I would say Aloha Airlines is fully governing in fact I think it's it was just cited a year last last year in a case we cite in our briefs by a district court and within this circuit it was cited by this circuit earlier in the 2000s for for an ERISA point so I I believe it remains good law so the the the decision we would say the court should rely on is Aloha Airlines and on this particular issue with the the Golden Gate case is distinguishable I'd also like to point out a third case that the court has decided back when ERISA first started the court decided Standard Oil Company versus Exelon which was then affirmed summarily by the US Supreme Court and in that case the court was asked to determine whether another Hawaii statute that required a health insurance plan that that basically the employer enroll individuals in health insurance whether that constituted an ERISA plan and the court held what the court held was that it did and that the statute was the Hawaii statute was State of Hawaii asserted that it wasn't preempt because of another instance in which a Rhode Island statute wasn't preempted and this is what Hawaii said why urges that there is an inconsistency in holding that the Hawaii Act is preempted by ERISA when another scheme the Rhode Island catastrophic insurance plan is not preempted the Rhode Island statues differs from the Hawaii statute and that the Rhode Island statute is not based on the employer employee relationship common to ERISA and the Hawaii Act the Rhode Island statute envisions a state administered fund rather than funds established or maintained by employers the Hawaii plan and the Rhode Island plan are distinguishable insofar as they may be affected by ERISA so that's that distinction is one the court has already noted and it must follow because it was in its own precedent of course and affirmed by the US Supreme Court and it next argument I'd like to push to is that Golden Gate even if you on a different theory actually supports fully supports preemption and in a different way Golden Gate says at the very end of the opinion that Judge Fletcher wrote says that where a statute sets up options one of which is not a risk option for this purpose I'll assume moving on to an alternative argument that the first option is not an ERISA option but only for purposes of this option that non ERISA option can save the statute from preemption only if it's a meaningful option if it's not one as the court put it that in practical effect the employer would choose it's not meaningful and shouldn't be considered because no right and it also noted that at the court also asked what a rational employer choose that option or alternatively does it have an irresistible incentive to provide its employees with a greater level of health benefits we've argued we in our complaint in this case we pled that this was not that the direct payment option even if it's a non ERISA option was not was not a meaningful remedy and that's because with it unlike the other options comes an employment tax obligation for the employer an employment tax obligation for the employee an income tax obligation for the employee there's no assurance that the employee will use the money for his or her health benefits and in addition the employer if it goes with the direct payment option is going to have to set up an administrative scheme anyway in addition to the ERISA plan it already has so no reasonable employer would accept this option this record rejected it saying we had to show evidence but this was it on a 12b6 stage and our our allegations are plausible on their face in fact no employer has accepted the direct payment option they've all shown they've all as we legendary complaint gone with the other options so I'd like to if there are no questions further questions I'd like to reserve the remainder of my time all right counsel thank you good afternoon and may it please the court Jeremiah Miller assistant city attorney for the city of Seattle I think the most important thing for this court to consider in resolving this issue is how the ordinance actually functions as counsel has suggested the ordinance comes with an obligation for employers to pay money to or on behalf of employees the employer can fully satisfy that payment obligation by making regular wage-like payments to employees this is critical in relation to the point that counsel was making about whether or not Aloha Airlines would require a different outcome here although briefly mentioned the real key to this question are the cases the Supreme Court cases in Morash and Fort Halifax there the Supreme Court specifically approved payments to employees for severance benefits in the case of Fort Halifax and for vacation payments in the floor in the case of Moresh Moresh the court recognized that those vacation benefits were a type of benefit that could create a plan under some circumstances but they held that a regular wage-like payment of vacation benefits simply didn't implicate the concerns that Arisa was intended to there was no more danger of defeated expectations by the employees that they've received those benefits than for regular wages and that is precisely the situation here the ordinance requires that employers pay every covered employee a fixed amount of money every month set by statute not by reference to any benefit or anything external the employers required to obtain and record general employment information there the employment character of these payments is really clear from the way that they're laid out as regular monthly recurring payments under that understanding of the individual direct payments there'd be no question that paying money to employees constitutes an Arisa plan as a matter of fact these this sort of invitation would call into question other decisions of this court surrounding payment of minimum wage that had wage variations based on Arisa plans like International Franchise Association the other point that I think is important for this court to consider is the degree to which Golden Gate simply controls and compels the outcome here as the district court determined the structure of these two ordinances is that the ordinance that's before the court today and the San Francisco ordinance are indistinguishable in their particulars the San Francisco ordinance requires payments to or on behalf of employees it sets the rate by normal yes your honor that's correct that the San Francisco ordinance does not have a direct payment option of the same sort as the ordinance in Seattle but the reasoning that this court used to arrive at finding that direct pay or finding the payment to the San Francisco health care plan to be not preempted by Arisa was precisely the Morash and Fort Halifax argument I began with the payment to the city yes under San Francisco's health care ordinance there was a direct payment to a city health care plan and it's in analyzing that that this court said well expanding the principles in Morash that have to do with regular wage-like payments those are not in Arisa plan you know the same logic which remains in effect today compels include the conclusion that the Seattle ordinance is obligation to pay money directly to employees is also not an Arisa plan so because Golden Gate controls the outcome of this case the district court correctly dismissed the underlying complaint as I was saying the ordinance structures are the same they both have non Arisa options within them they have similar kinds of record-keeping requirements council made some references to a waiver program there's a similar waiver provision in the San Francisco ordinance those waivers under the San Francisco ordinance required to be voluntary which would require some information you know waivers of wages owed or payments like that are not uncommon in state law they're common in state of Washington several places where deductions from recorded and then there has been no intervening change in the law that would suggest that Golden Gate isn't simply binding precedent in this circuit given those two given that the case is there's no factual distinct distinction between the two ordinances and that the law has remained good the outcome has to be that the ordinance is not preempted by Arisa but even to the extent that longer applied or was distinguished ones facts it was built on absolutely settled Supreme Court precedent that was even just recently reaffirmed by the Supreme Court in the Rutledge case Golden Gates central conclusions were driven by the trilogy of travelers Dillingham and Dubuono and those three cases laid out the modern Arisa jurisprudence including the tests that are used under the relate to language of the preemption clause that is that only laws that either make an impermissible reference to or have an impermissible connection with Arisa plans are actually preempted and in this case there could be no question there is no reference to the an Arisa plan for that to be true they would have to be the law would have to immediately and exclusively act upon Arisa plans which it does not or Arisa plans would have to be essential to its it's not an Arisa plan so the law is fully functional in the absence of any Arisa plan this is a similarly the case for the connection with prong there you would need a ordinance that was so structured that it dictated certain plan choices or bound plan administrators to a certain outcome I think it's really critical to understand that this ordinance applies only to employers and employees to the extent that it has some tangential impact on choices plans make that's really the distant relationship that was specifically approved in cases like Dillingham Rutledge and travelers where changes in the cost that might be felt by the plans just simply aren't enough to lead to preemption and it related to this two-pronged test which is the modern Arisa jurisprudence council's reliance on Aloha is particularly misplaced so council claims to be studying Aloha only for the purpose of establishing what constitutes an Arisa plan but the case has to be read as a whole and it reached the conclusion that the state law under under analysis there was preempted using a four-part test which is no longer current and in fact turning on things like that it required varying payments at varying times it's not a feature of this ordinance that was one of the elements in Aloha also that it required a specific medical benefit I mean the Aloha case had a state law where they were paying for a very specific medical exam that the FAA had mandated for pilots here you're talking about again payments of money that don't have to be used for anything in particular so so like I said Aloha should not drive this court's decision in this case you know in the end this is absolutely the sort of case where you've got an ordinance that is fully functional in the absence of any Arisa plan it's about regulating the relationship between employers and employees not about regulating plan administration or requiring plans to do anything there really is no reason to look at the scope of laws that Congress thought would survive and find an ordinance like this one that is so clearly within the traditional authorities of this of the of the city to protect the safety and health of its workers and find that it should have been preempted particularly not since the Supreme Court has retreated from the admittedly impossible to interpret or enforce relate to language that's in the and then I guess the last thing I'd like to address is counsel suggestion that the costs imposed by this ordinance were so acute that they caused or that they should be a basis for preemption the first thing I'd like to point out on that subject is that the ordinance requires the payment of a set amount of money and that set amount of money does not vary by the option that's selected so simply on its face the ordinance does not require employers to spend more or less money if they choose an Arisa method or a non Arisa method for coverage but in addition to that you know although this language about economic effects being sufficient or possibly sufficient has been repeated by the Supreme Court for years we're unaware and as far as we can tell there are no cases that actually apply that as a means of establishing risk of travelers doing and Dillingham and also Rutledge where the court doesn't the Supreme Court there doesn't even engage in discussions about the facts of the actual costs there doesn't appear to be a an issue with the amount of money it was costing plans to comply but rather they say when you make changes that affect the shopping decisions of a plan they're not enough so again the district court here was correct to dismiss this complaint under the controlling precedent of Golden Gate and the Supreme Court cases that underlie it like travelers doing him to Bono which were recently reaffirmed in Rutledge if there are no further questions I believe I've covered all the points I would like to all right thank you counsel your bottle thank you your honor just like to make a few points first of all mr. Miller repeated several times and really the basis of the argument is that the payments under the direct payment option are just wait just wage like the term he used they can't be wages they can't be wage like because they they vary based on the size of the family and the marital status of the individual not not even health need it's just the marital status of the individual under Washington law wages that differentiate based on marital status are illegal they're discriminatory against those who aren't married so they aren't wage like I got the point that they're that they're wage like and I understand the distinction so tell me why that makes a difference here if there's still direct payments they are direct payments but the distinction is that you have to set up a separate system from wages in order to administer in an order to administer the payments you can't just you know they aren't just an add-on to wages that are already there you have to have an entirely different system to administer the direct payment here you have to go you have to reasonably investigate each individual employees circumstances to the the rate for a single person a married person a person with a partner a person with dependents whether they're children or others living in your house so therefore and it's this this is the key that an administrative scheme the employer has to create is what makes for an erisa plan mr. Miller relied on Fort Halifax but Fort Halifax on this point has a very helpful discussion for us and this is a page 12 of the Fort Halifax to this decision where the court says why the the direct payment there was not an erisa plan and the court said the requirement of a one-time lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employers obligations the employer assumes no responsibility to pay benefits on a regular basis and thus faces no periodic demands on its assets that create a need for financial coordination and control this isn't a one-time lump-sum payment equal for everybody in this case this is a monthly recurring payment that will vary depending on whether the the person is married has the partner has family members whether more dependents enter the house the children the employee has a baby all those things change and it changes every single month in addition there's the the whole waiver process that is completely different from the San Francisco ordinance and not at all present in Fort Halifax the last point I'd like to make is that mr. Miller suggested that Golden Gate does in its reasoning indicate that if it were a direct payment option there as to the employee as opposed to to the city that there still would have been preemption but tying the two exactly together is impossible given the standard oil versus ag salute case which I cited earlier and spoke from earlier because it draws a distinction between the two and in any event the the Golden Gate San Francisco ordinance was was just a tag-on to wages as opposed to what we have here so we would we would ask that the court reverse what the district court did this this case the statute is preempted I thank you counsel thank you to both counsel the case just argued is submitted for decision by the court that completes our calendar for today we are in recess until 1 o'clock p.m. tomorrow
judges: Tashima, Rawlinson, Bybee